**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| NETSOC, LLC |
|                          Plaintiff, |
|      v. |
| YAHOO! INC. |
|                          Defendant. |

No. 18-cv-12267-RA
[rel. 1:18-cv-10262-RA]

### DEFENDANT OATH INC.'S MEMORANDUM OF LAW
### IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

Date:  September 13, 2019

Ralph Carter
DUANE MORRIS LLP
1540 Broadway
New York, New York 10036-4086
Telephone:  (212) 471-4725
Facsimile:  (212) 208-2575
rcarter@duanemorris.com

-and-

Alison Marie Haddock
DUANE MORRIS LLP
1075 Peachtree Street
Suite 2000
Atlanta, Georgia 30309
Telephone:  (404) 253-6900
Facsimile:  (404) 253-6901
ahhutton@duanemorris.com

*Attorneys for Defendant Oath Inc.*

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ....................................................................................1

II.     BACKGROUND .........................................................................................................3

      A.      The Original Complaint ....................................................................................3

      B.      The First Amended Complaint and Oath's Motion to Dismiss ............................4

      C.      The Second Amended Complaint and the Parties' Meet and Confer ....................6

      D.      The July 19, 2019 and August 27, 2019 Conferences ............................................7

III.    LEGAL STANDARDS .................................................................................................8

      A.      This Court May Impose Rule 11 Sanctions *Sua Sponte* for NetSoc's Bad
          Faith Filing of Its Claim Under the '107 Patent ....................................................8

      B.      28 U.S.C. § 1927 .............................................................................................9

      C.      Sanctions Under the Court's Inherent Power .........................................................10

      D.      Sanctions Under Rule 41 ....................................................................................10

      E.      35 U.S.C. § 285 ...............................................................................................11

      F.      Reasonableness of Attorneys' Fees ......................................................................12

IV.     ARGUMENT ............................................................................................................13

      A.      Oath is Entitled to Fees as a Sanction for NetSoc's Conduct Relating to
          the '107 Patent ...............................................................................................13

             1.      *Sua Sponte* Sanctions are Appropriate Under Rule 11 ...............................14
             2.      Sanctions Are Appropriate Under 28 U.S.C. § 1927 and the Court's
                  Inherent Power ....................................................................................15
             3.      Oath is Entitled to Attorneys' Fees and Costs Pursuant to Federal
                  Rule of Civil Procedure 41(d) ...............................................................16
              4.      NetSoc's Suit Against Oath is Exceptional Under 35 U.S.C. § 285 ...........17

      B.      Oath's Attorneys' Fees Request is Reasonable ....................................................18

V.      CONCLUSION..........................................................................................................21

## TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Activox, Inc. v. Envirotech Corp.*, 532 F. Supp. 248 (S.D.N.Y. 1981) ..........................................11

*Carousel Foods of Am., Inc. v. Abrams & Co.*, 423 F. Supp. 2d 119
    (S.D.N.Y. 2006) ........................................................................................................10

*Delvalle v. Cedric Kushner Promotions, Ltd.* No. 00 Civ 5688 (JSR),
    2000 WL 1915808 (S.D.N.Y. Jan. 9, 2000) .........................................................11

*Edison Coatings, Inc. v. Freedom Cement, LLC*, No. 15-CV-2726 (LAK),
    2017 WL 462339 (S.D.N.Y. Jan. 30, 2017) ......................................................... 8-9

*Esquivel v. Arau*, 913 F. Supp. 1382 (C.D. Cal. 1996) ......................................................... 10-11

*Finnavations LLC v. Payoneer, Inc.*, Civil Action No. 1:18-cv-00444-RGA,
    2019 WL 1236358 (D. Del. Mar. 18 2019) .............................................................12

*Gust, Inc. v. AlphaCap Ventures, LLC*, 226 F. Supp. 2d 232 (S.D.N.Y. 2016) .....................12, 17

*Hanson v. Litton Loan Servicing, LP*, No. 3:04CV568 (WWE),
    2004 WL 7339574 (D. Conn. Dec. 16, 2004) ..........................................................11

*Horowitz v. 148 S. Emerson Assocs. LLC*, 888 F.3d 13 (2d Cir. 2018)................................. 10-11

*Lumen View Tech., LLC v. Findthebest.com, Inc.*, 24 F. Supp. 3d 329
    (S.D.N.Y. 2014), *aff'd*, 811 F.3d 479 (Fed. Cir. 2016) ..........................................18

*Margo v. Weiss*, 213 F.3d 55 (2d Cir. 2000)..............................................................................8

*McCabe v. Lifetime Entm't Servs., LLC*, 761 F. App'x 38 (2d Cir. 2019) ................................8

*Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104 (2d Cir. 2013) (per curiam)......................8

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014)...............................12

*Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir. 1986)...............................................................9, 16

*OZ Mgmt. LP v. Ozdeal Inv. Consultants, Inc.*, No. 09 Civ 8665 (JGK) .....................................20

*Parallel Iron LLC v. NetApp, Inc.*, 70 F. Supp. 3d 585 (D. Del. 2014)......................................12

*Pelczar v. Pelczar*, No. 16-CV-55 (CBA) (LB), 2017 WL 3105855
    (E.D.N.Y. July 20, 2017) .........................................................................................11

*Regeneron Pharm., Inc. v. Merus N.V.*, No. 14-cv-1650 (KBF),
  2018 WL 3425013 (S.D.N.Y. June 25, 2018), appeal dismissed,
  No. 18-2192 (Fed. Cir. Dec. 28, 2018) ...................................................................... 12-13, 20

*Revellino & Byczek, LLP v. Port Auth. of N.Y. & N.J. (PANYNJ)*, 682 F. App'x 73
  (2d Cir. 2017) ...................................................................................................................... 8-9, 15

*River Light V, L.P. v. Lin & J Int'l, Inc.*, No. 13CV3669 (DLC),
  2015 WL 3916271 (S.D.N.Y. June 25, 2015) ........................................................................ 20

*Schlaifer Nance & Co. v. Estate of Warhol,* 194 F.3d 323 (2d Cir. 1999) ..................................... 9

*SSL Servs., LLC v. Citrix Sys., Inc.,* 769 F.3d 1073 (Fed. Cir. 2014) ........................................... 12

*U.S. v. Int'l Bhd. of Teamsters,* 948 F.2d 1338 (1991) ................................................................. 10

*Worldwide Home Prods., Inc. v. Bed, Bath and Beyond, Inc.*,
  No. 11CV3633-LTS-MHD, 2015 WL 1573325 (S.D.N.Y. Apr. 9, 2015) ............. 9, 12-13, 21

## Statutes

28 U.S.C. § 1927 ...................................................................................................... 1-2, 9-10, 13, 15

35 U.S.C. § 101 ...................................................................................................................... 4-5, 17

35 U.S.C. § 285 ............................................................................................................1-2, 11-12, 17-18

## Other Authorities

Federal Rule of Civil Procedure 11(c)(3) ........................................................................... 1, 8

Federal Rule of Civil Procedure 41(d) .................................................................... 1-2, 10-11, 16-17

Defendant Oath Inc. ("Oath") respectfully submits this Memorandum of Law in support of an order awarding Oath $32,788.50 reflecting the attorneys' fees expended by Oath in responding to NetSoc, LLC's ("NetSoc") admittedly baseless allegations concerning U.S. Patent No. 9,978,107 (the "'107 Patent").  This Court is authorized to grant an award of attorneys' fees under 35 U.S.C. § 285, 28 U.S.C. § 1927, Federal Rule of Civil Procedure 41(d), and its inherent power, and also may exercise *sua sponte* authority under Federal Rule of Civil Procedure 11(c)(3).  As further explained below, this fee application reflects reasonable rates for reasonable time spent by Oath's counsel defending against NetSoc's '107 Patent claims, which NetSoc has now dismissed with prejudice.  This award is justified not just because of the objective weakness of NetSoc's claims, but also because of NetSoc's bad-faith litigation conduct, which unnecessarily and inexplicably multiplied Oath's fees.  A fee award will not only address the prejudice to Oath that NetSoc's conduct caused, but also serve as an importance deterrence to future misconduct by NetSoc and others similarly situated.

## I.  PRELIMINARY STATEMENT

NetSoc conceded in communications with Oath's counsel that this case as originally filed was not based on a sufficient pre-filing investigation because NetSoc had not intended to assert the '107 Patent against Oath at all.  This sort of egregious mistake, committed in a pleading signed by NetSoc's counsel, might have been forgivable had NetSoc's counsel realized its error before it unnecessarily multiplied the proceedings in this case.  But that is not what happened.  Instead, in response to Oath's Motion to Dismiss, NetSoc ignored Oath's argument that no claim of the '107 Patent had been cited in the Amended Complaint and thus NetSoc's '107 Patent infringement claims had not been plausibly pled.  Indeed, NetSoc's complete failure to respond to this point raises questions about whether NetSoc read Oath's Motion to Dismiss ***at all***.

It was only on July 8, 2019, after Oath expended money on attorneys' fees briefing its motion to dismiss and in securing a stay of the case, that NetSoc changed its position, and attempted to swap out the '107 Patent for its parent, the '591 Patent.  In other words, NetSoc ignored for over three months and through multiple briefs and a letter motion the fact that NetSoc's Complaint cited claims from ***another patent*** in support of its infringement allegations and that it had erroneously asserted the '107 Patent.

This conduct, and now the order of the Northern District of Texas invalidating the '107 Patent, confirms that sanctions in the form of Oath's attorneys' fees should be awarded in this case under 35 U.S.C. § 285, 28 U.S.C. § 1927, Fed. R. Civ. P. 41(d), and this Court's inherent power. NetSoc's now-dismissed case concerning the '107 Patent, a patent that Judge Godbey of the Northern District of Texas found claims unpatentable subject matter, is exceptional.  That is because NetSoc admittedly did not conduct an adequate pre-suit investigation into the merits of its '107 Patent allegations.  Had it done so, NetSoc should have come to the conclusion that the '107 Patent is patent ineligible, and for that additional reason fees under § 285 are appropriate. Sanctions in the form of attorneys' fees are also merited in this case because NetSoc pursued its baseless litigation after Oath filed its Motion to Dismiss and unnecessarily multiplied the proceedings in this case.  Finally, the fact that NetSoc dismissed its claim concerning the '107 Patent only to file a claim against Oath concerning the '591 Patent merits an award of attorneys' fees to Oath in light of the prejudice NetSoc's conduct has caused.

This is not the first time that NetSoc's counsel has pursued potentially unmeritorious patent claims.  In addition to its unmeritorious claims against Oath, NetSoc asserted, and then dismissed, '107 Patent claims against Quora on a substantially similar basis.  Moreover, NetSoc's counsel is currently facing a motion for fees in the *WPEM, LLC v. SOTI Inc.* matter in the Eastern District of

Texas in which SOTI Inc. likewise argued that Mr. Ramey, on behalf of his client WPEM, LLC, failed to conduct a reasonable investigation before filing suit.  There, SOTI argued that an adequate pre-suit investigation would have revealed that the plaintiff's own prior patent application invalidated the asserted patent and that the accused instrumentality was offered for sale months before the asserted patent's priority date.  (Ex. A to Hutton Declaration, SOTI Motion for Attorneys' Fees in *WPEM, LLC v. SOTI Inc.*).  Moreover, in that case, as in this one, SOTI is seeking fees because WPEM, LLC continued to pursue its infringement case for months despite clear and irrefutable evidence from opposing counsel that its claims were unmeritorious.  (*Id.* at 6-8).

The fees that Oath is seeking in this case are reasonable and reflect only the amounts that Oath paid its counsel to respond to NetSoc's original assertion of the '107 Patent.  As evidenced by the attached invoices, the rates charged by Oath's counsel are in line with the rates charged by counsel for similar work, and the hours expended are non-duplicative and in line with the tasks undertaken.  For the foregoing reasons, and as further explained below, Oath asks that this Court award Oath $32,788.50 in attorneys' fees.

## II.     BACKGROUND

### A.     The Original Complaint

NetSoc filed the present litigation against Oath on December 27, 2018.  (ECF 1).  NetSoc asserted in its Original Complaint that Oath infringed the '107 Patent because it "maintains, operates, and administers a website at www.yahoo.com that infringes one or more claims of the '107 patent." (ECF 1 at ¶ 9).  NetSoc attached the '107 Patent to the Original Complaint as Exhibit A and referenced the '107 Patent issue date of May 22, 2018, title, and claims (1-11) in the Original Complaint allegations.  (*Id.* at ¶¶ 7, 9 & Ex. A).  NetSoc also included a "preliminary table" as support for its infringement allegations purporting to chart "claim 1" of the '107 Patent to features

of the accused Yahoo! Answers instrumentality.  (*Id.* at ¶ 10).  Further, NetSoc alleged that Oath

had "known of the '107 Patent and the technology underlying it from at least the date of issuance

of the patent."  (*Id.* at ¶ 11).  NetSoc sought, among other things, a declaration that Oath's alleged

infringement of the '107 Patent was "willful."  (*Id.*, Prayer for Relief).  NetSoc's counsel David

Hoffman of Ramey & Schwaller LLP signed the Original Complaint.  (*Id.* at p. 27).

### B.    The First Amended Complaint and Oath's Motion to Dismiss

On March 12, 2019, NetSoc filed Plaintiff's First Amended Complaint against Oath, fixing

an error in the named party to the lawsuit.[1]  (ECF 22).  Other than swapping out references to

"Yahoo!" and changing them to "Oath," NetSoc made no substantive edits to its allegations and

continued to assert that Oath "maintains, operates, and administers a website . . . . that infringes

one or more claims of the '107 patent," referencing various portions of the '107 Patent.  (*Id.* at

¶¶ 9, 10).  William Ramey of Ramey & Schwaller, attorney for NetSoc, signed the Amended

Complaint.  (*Id.* at p. 28).

On March 25, 2019, this Court consolidated the NetSoc case against Oath with the matters

concerning the '107 Patent filed against Quora, Chegg and LinkedIn.  (ECF 26).  One day

thereafter, Oath filed a motion to dismiss NetSoc's First Amended Complaint on the basis that,

among other things, the '107 Patent claimed unpatentable subject matter under 35 U.S.C. § 101,

and NetSoc "***failed to plead any claims corresponding to the ['107] patent cited***" (i.e., the '107

patent).  (ECF 28 at 16).  In support of the latter argument, Oath specifically noted the following:

> NetSoc's Amended Complaint **alleges that Oath infringes "one or more claims of the
> '107 patent, including at least claims 1-11, literally or under the doctrine of equivalents***."
> (Am. Compl. ¶ 9.)  NetSoc, however, fails to plead any facts that plausibly show Oath
> infringes a single claim of the '107 patent.  The only facts alleged by NetSoc in support of
> its allegation that Oath infringes the '107 patent are screen shots of the Oath website

---

[1] Specifically, Yahoo! was erroneously identified as defendant to the Original Complaint, but Oath
now owns the accused Yahoo! Answers instrumentality.

www.answers.yahoo.com provided in the chart in Paragraph 10 of the Amended Complaint under the header "Accused Product or Service."  (Am. Compl. ¶10.)

These screen shots are provided alongside language identified as "Claim 1" of the '107 Patent.  *Id.  **However, the claim language provided in Paragraph 10 is not the language that claim 1 of the '107 patent actually recites.  In fact, the claim language provided in Paragraph 10 under the header "Claim 1" does not correspond to any of the claims of the '107 patent.***

(ECF 28 at 16-17 (emphasis added)).

On April 29, 2019, without complying with this Court's Individual Rule of Practice 4.C. (i.e., without notifying the Court and Oath in writing whether it intended to file an amended pleading or if it intended to rely on the pleading being attacked), NetSoc filed its Opposition to Oath's Motion to Dismiss.  (ECF 33).  In its Opposition, NetSoc doubled down on its infringement allegations relating to the '107 Patent, arguing that it had "plausibly" alleged infringement by Oath and that NetSoc ***need not "plead facts indicating each patent-claim limitation's*** correspondence ***to a feature of defendant's accused instrumentality*** ."  (*Id. at* 2-3 (emphasis added)).  NetSoc also attempted to defend against Oath's arguments under § 101 by arguing, among other things, that ***Oath's motion to dismiss "obscure[d] [the] significant complexity of Claim 1" of the '107 patent, which NetSoc quoted in full in its Opposition*** .  (*Id.* at 20 (emphasis added)).  However, NetSoc did not explain why there was a claim not found in the '107 Patent charted in its Amended Complaint (or even address that portion of Oath's argument).  (ECF 33).  Oath filed its Reply in Further Support of its Motion to Dismiss on May 20, 2019, responding to NetSoc's arguments and again raising the fact that no claim of the '107 Patent had been charted in NetSoc's Amended Complaint, and that NetSoc had failed to respond to this issue.  (ECF 38 at 2-3).

On July 3, 2019, Your Honor concluded that a stay of discovery in this case was warranted in light of the consolidated Defendants' motions to dismiss, which the Court had "considered." (ECF 42).  Six days thereafter, late in the evening of July 9, 2019, counsel for NetSoc served Oath

5

with "infringement contentions . . . and the required production," along with the following email request:

> ***We also intend to file a motion to amend the complaint to list the related '591 patent. Our charts were for the '591 patent not the '107 patent. The complaint listed the wrong patent number but the correct chart. Are you opposed to our motion for leave?*** I am attaching the amended complaint for your review.

(Ex. B to Hutton Declaration, July 8, 2019 Email from William Ramey to Alison Hutton).

### C.     The Second Amended Complaint and the Parties' Meet and Confer

The next morning, on July 10, without awaiting a response from counsel for Oath and without a supporting Motion for Leave, NetSoc filed its Second Amended Complaint asserting only the '591 Patent.  (ECF 43).  In other words, more than ***three months*** after Oath filed its Motion to Dismiss NetSoc's allegations concerning the '107 Patent, almost a month after Oath filed a request to stay discovery pending the outcome of its Motion to Dismiss (ECF 53), and a few days after this Court ordered a stay of discovery in light of Your Honor's "consideration" of Oath's Motion to Dismiss the '107 Patent, NetSoc sought to drop its '107 Patent infringement allegations entirely and substitute a new patent into the case.

Counsel for Oath and Quora asked NetSoc's counsel William Ramey to voluntarily withdraw its procedurally improper Second Amended Complaint on a meet and confer teleconference on July 12, 2019.  (Declaration of Alison Hutton at ¶ 4).  On that call, Mr. Ramey explained that NetSoc had not done a complete analysis of infringement for Oath on the '107 Patent, and thus had an "ethical obligation" to withdraw its claims as to the '107 Patent.  (*Id.* at ¶ 5).  Mr. Ramey further asserted that NetSoc's counsel identified the error when they were (inexplicably) preparing infringement contentions despite this Court's discovery stay.  (*Id.*).  Mr. Ramey did not, and never has, explained why NetSoc's error was not discovered earlier, such as in response to the Motion to Dismiss.  (*Id.* at ¶¶ 6-7).

In light of Mr. Ramey's admission that the Original and Amended Complaints against Oath had been filed without a reasonable inquiry, and given that the Court and parties had (at NetSoc's own admission) expended significant and unnecessary resources on the '107 Patent, counsel for Oath explained to Mr. Ramey that Oath intended to move for fees for what amounted to grossly negligent and bad-faith conduct by NetSoc if NetSoc insisted on moving forward with the '591 Patent. (*Id.* at ¶ 8). Mr. Ramey then expressed his disagreement with Oath's position, but committed to seek leave of this Court, before changing NetSoc's position by email the same day, stating that "[w]e do not believe a motion for leave is necessary but we are willing to file one if you show us why it is necessary." (*Id.* at ¶¶ 8-9; Ex. C to Hutton Declaration, Email from William Ramey of July 12, 2019).

### D.     The July 19, 2019 and August 27, 2019 Conferences

In response to the parties' request (ECF 45, 46), this Court ordered NetSoc and Oath to attend a July 19, 2019 teleconference to discuss NetSoc's proposed amendment of its patent claims. In that teleconference, the Court asked NetSoc's counsel to advise whether NetSoc would be willing to dismiss its claims with respect to the '107 Patent with prejudice. (Ex. D to Hutton Declaration, July 19, 2019 Teleconference Tr. at 7-8). By letter dated July 23, 2019, NetSoc did so. (ECF 50; *see also* ECF 59 (Stipulation and Order of Dismissal of '107 Patent claims)). Your Honor ordered the parties to appear for an additional in-person status conference on August 27, 2019 in response to NetSoc's request. (ECF 50, 51). After that conference, the Court set a briefing schedule for the present motion for attorneys' fees. (ECF 57).

III.    **LEGAL STANDARDS**

    **A.      This Court May Impose Rule 11 Sanctions *Sua Sponte***
          **for NetSoc's Bad Faith Filing of Its Claim Under the '107 Patent**

By its terms, Rule 11(b) requires an attorney to sign every pleading, motion, or other paper submitted on behalf of his client, and the attorney is subject to sanctions if the document he signs violates Rule 11.  *Margo v. Weiss*, 213 F.3d 55, 64 (2d Cir. 2000).  A pleading, motion, or other paper violates Rule 11 "'when it has been interposed for any improper purpose, or where, ***after reasonable inquiry***, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.'"  *McCabe v. Lifetime Entm't Servs., LLC*, 761 F. App'x 38, 41 (2d Cir. 2019) (emphasis added) (quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002)), *petition for cert. filed ,* No. 18-1353 (U.S. Apr. 29, 2019).

Although an objective unreasonableness standard applies where a party moves for Rule 11 sanctions, this Court can impose Rule 11 sanctions *sua sponte* upon a finding of subjective bad faith pursuant to Federal Rule of Civil Procedure 11(c)(3).  *See Revellino & Byczek, LLP v. Port Auth. of N.Y. & N.J. (PANYNJ)*, 682 F. App'x 73, 75 (2d Cir. 2017) ("Applying [subjective bad faith] standard to the facts of this case, we hold that the district court did not abuse its discretion in finding that the evident elisions in Ramirez's complaint demonstrate that the filing was submitted in bad faith, and subjectively so."); *see also Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104, 108 (2d Cir. 2013) (per curiam) (In Rule 11(c)(3) cases "'the [twenty-one day] safe harbor does not apply and the court may impose sanctions without providing opportunity to withdraw the misstatement.'"); *Edison Coatings, Inc. v. Freedom Cement, LLC*, No. 15-CV-2726 (LAK), 2017 WL 462339, at *1 (S.D.N.Y. Jan. 30, 2017) ("Ordinarily, opposing counsel will initiate Rule 11 proceedings. . . . 'Rule 11 also gives the court the power to initiate sanctions

proceedings *sua sponte*.  In these rarer cases, however, the 21-day safe harbor does not apply and the court may impose sanctions without providing opportunity to withdraw the misstatement.'") (quoting *Muhammad*, 732 F.3d at 108).

Courts in the Second Circuit have found subjective bad faith in a variety of cases, including whether there is evidence presented that the counsel knew its argument or factual statement was without merit, or where an argument is regarded as frivolous.  *Revellino & Byczek, LLP*, 682 F. App'x at 75; *Edison Coatings, Inc.*, 2017 WL 462339, at *2 (citing cases).

**B.      28 U.S.C. § 1927**

Another basis for sanctions is 28 U.S.C. § 1927, which imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics and undue delay.  Under 28 U.S.C. § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the [C]ourt to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  To impose a fee award pursuant to § 1927, "'"a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, motivated by improper purposes such as harassment or delay."'"  *Worldwide Home Prods., Inc. v. Bed, Bath and Beyond, Inc.*, No. 11CV3633-LTS-MHD, 2015 WL 1573325, at *5 (S.D.N.Y. Apr. 9, 2015) (quoting *Wynder v. McMahon*, 565 F. App'x 11, 13 (2d Cir. 2014) (in turn quoting *Eisemann v. Greene,* 204 F.3d 393, 396 (2d Cir. 2000)), *aff'd*, 626 F. App'x 1009 (Fed. Cir. 2015).  "[A] claim is entirely without color when it lacks any legal or factual basis."  *Schlaifer Nance & Co. v. Estate of Warhol,* 194 F.3d 323, 337 (2d Cir. 1999) (internal quotation and citation omitted).  Notably, bad faith may be inferred "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay."  *Oliveri v.*

*Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986).  Awards pursuant to § 1927 may be imposed only against the offending attorney.  *U.S. v. Int'l Bhd. of Teamsters,* 948 F.2d 1338, 1345 (1991).

### C.  Sanctions Under the Court's Inherent Power

Sanctions may also be awarded under the Court's inherent sanction power for baseless and bad-faith conduct in litigation, which includes the failure of an attorney to perform adequate research before asserting a claim.  *See Carousel Foods of Am., Inc. v. Abrams & Co.*, 423 F. Supp. 2d 119, 123 (S.D.N.Y. 2006) (awarding sanctions under the court's inherent sanction power based upon, among other things, attorney's failure to provide any "real answer to the suggestion that he performed inadequate research into the facts before asserting" a RICO claim).  This sanction power includes the power to assess costs and attorneys' fees against either the client or his attorney.  *Int'l Bhd. of Teamsters* 948 F.2d at 1346.

### D.  Sanctions Under Rule 41

Rule 41(d) provides yet another basis for the imposition of sanctions, based upon the re-filing of previously dismissed cases.  Rule 41(d) provides as follows:

> (d) Costs of a Previously Dismissed Action. If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court:
>> (1) may order the plaintiff to pay all or part of the costs of that previous action; and
>> (2) may stay the proceedings until the plaintiff has complied.

"Costs may be imposed under Rule 41(d) where the plaintiff has brought a second identical, ***or nearly identical***, claim and has requested identical, or ***nearly identical***, relief."  *Esquivel v. Arau*, 913 F. Supp. 1382, 1387 (C.D. Cal. 1996) (emphasis added) (citing *Young v. Dole*, No. 90CV267 (TCP), 1991 WL 158977 (E.D.N.Y. 1991)).

"Rule 41(d)'s purpose is clear and undisputed: 'to serve as a deterrent to forum shopping and vexatious litigation.'"  *Horowitz v. 148 S. Emerson Assocs. LLC*, 888 F.3d 13, 25 (2d Cir.

2018) (citation omitted).  This rule "serves the broader purpose of penalizing a plaintiff for re-filing the very suit he has previously dismissed." *Delvalle v. Cedric Kushner Promotions, Ltd.* No. 00 Civ. 5688 (JSR), 2000 WL 1915808, at *1 (S.D.N.Y. Jan. 9, 2000).  As noted by the Second Circuit in *Horowitz*, "[t]he need for attorneys' fees may be especially acute in the Rule 41(d) context."  888 F.3d at 26.  As such, Rule 41(d) "has been interpreted in this Circuit to include payment of attorney's fees as 'compensation for work done in the first action that cannot be used in a second existing or contemplated action.'"  *Pelczar v. Pelczar*, No. 16-CV-55 (CBA) (LB), 2017 WL 3105855, at *2 (E.D.N.Y. July 20, 2017) (citations omitted); *accord Hanson v. Litton Loan Servicing, LP*, No. 3:04CV568 (WWE), 2004 WL 7339574, at *3 (D. Conn. Dec. 16, 2004).  *See also Horowitz*, 888 F.3d at 25 ("We thus have no difficulty in concluding that Rule 41(d) evinces an unmistakable intent for a district court to be free, in its discretion, to award attorneys' fees as part of costs.").

An award under Rule 41(d) does not require a showing that NetSoc acted in bad faith.  Rather, "the court should simply assess whether a plaintiff's conduct satisfies the requirements of Rule 41(d), and whether the circumstances of the case warrant an award of costs to prevent prejudice to the defendant."  *Esquivel*, 913 F. Supp. at 1388.  *See also Activox, Inc. v. Envirotech Corp.*, 532 F. Supp. 248, 251 (S.D.N.Y. 1981) (granting Rule 41(d) costs for previously dismissed patent action because "[w]hatever the strategy of [Plaintiff] may have been in dismissing its prior action, by virtue of Fed. R. Civ. P. 41(d) it is now subject to 'the payment of costs of the action previously dismissed'") (citation omitted).

### E.    35 U.S.C. § 285

Finally, 35 U.S.C. § 285 authorizes a court to award attorneys' fees to the prevailing party in "exceptional" patent cases.  The decision to award attorneys' fees involves a two-step analysis: (1) first, the district court must determine whether the case is exceptional; and (2) second, it must

determine whether the requested attorneys' fee award is reasonable.  *Worldwide Home Prods.,* 2015 WL 1573325, at *2.  An exceptional case is "one that stands out from the others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).  District courts have deemed cases exceptional where there was "no question" that the patent-in-suit was patent ineligible under the Federal Circuit's current precedent.  *Finnavations LLC v. Payoneer, Inc.*, Civil Action No. 1:18-cv-00444-RGA, 2019 WL 1236358, at *1 (D. Del. Mar. 18 2019).  They have also awarded fees due to a failure to conduct an adequate pre-suit investigation.  *See Parallel Iron LLC v. NetApp, Inc.,* 70 F. Supp. 3d 585 (D. Del. 2014) (awarding attorneys' fees to defendants where plaintiff failed to conduct a sufficient pre-suit investigation and pursued claims in bad faith).

The dismissal of patent infringement claims with prejudice has the necessary "judicial imprimatur" to constitute a judicially sanctioned change in the legal relationship of the parties such that the Court may properly entertain a fee claim under 35 U.S.C. § 285.  *Gust, Inc. v. AlphaCap Ventures, LLC,* 226 F. Supp. 2d 232, 240-41 (S.D.N.Y. 2016), *overturned on other grounds,* 905 F.3d 1231 (Fed. Cir. 2018).  This conclusion is not altered by the fact that certain patent claims may remain because "[a] party does not need to prevail on all claims to qualify as the prevailing party."  *SSL Servs., LLC v. Citrix Sys., Inc.,* 769 F.3d 1073, 1086 (Fed. Cir. 2014).  Finally, parties may be held liable under § 285 for the actions of their attorneys in a litigation.  *Worldwide Home Prods.*, 2015 WL 1573325, at *2.

## F.      Reasonableness of Attorneys' Fees

In this District, the starting point in determining a fee award is arriving at the lodestar number, or the number of hours reasonably expended multiplied by a reasonable hourly rate. *Regeneron Pharm., Inc. v. Merus N.V.*, No. 14-cv-1650 (KBF), 2018 WL 3425013, at *2

(S.D.N.Y. June 25, 2018), appeal dismissed, No. 18-2192 (Fed. Cir. Dec. 28, 2018).   Courts

consider the prevailing market rate in the relevant community (e.g., the rate of the forum court or

geographic location where the attorney is based) as well as the attorneys' comparable skill,

experience and reputation in determining what constitutes a reasonable hourly rate. *Id.*, at *3.   In

a patent infringement case, the district court may consider the American Intellectual Property Law

Association surveys of typical litigation costs and rates to determine what is "reasonable."

*Worldwide Home Prods.*, 2015 WL 1573325, at *3.   "Whether the number of hours used to

calculate the lodestar is 'reasonable' is determined by examining . . . (1) whether a case was

'overstaffed'; (2) the 'skill and experience' of the lawyers; and (3) whether any hours were

'excessive, redundant, or otherwise unnecessary.'"   *Regeneron Pharm.*, 2018 WL 3425013, at *3

(quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

## IV.   ARGUMENT

### A.   Oath is Entitled to Fees as a Sanction for NetSoc's Conduct Relating to the '107 Patent

NetSoc's conduct, and now Judge Godbey's Order invalidating the '107 Patent, confirms

that sanctions against NetSoc and/or its counsel in the form of Oath's attorneys' fees are

appropriate in this case for multiple reasons.   First, NetSoc's original assertion of the '107 Patent

was objectively unreasonable, given its later admission that such assertion was unwarranted and

unsupported by any pre-suit analysis.   Even if NetSoc's Original and Amended Complaints and its

admissions that it knew its arguments were without merit did not violate its Rule 11 obligations,

NetSoc at a minimum violated Rule 11 in its response to Oath's Motion to Dismiss, in which it

took a litigation position evincing subjective bad faith by defending its '107 Patent claims despite

clear evidence of the mistake in its earlier pleading.   Second, sanctions are appropriate under

§ 1927 and the Court's inherent power due to NetSoc's counsel's vexatious and unreasonable

multiplication of the proceedings.  NetSoc's mistaken assertion of the '107 Patent against Oath, and continued pursuit of that patent for months in opposition to Oath's Motion to Dismiss, unnecessarily increased Oath's attorneys' fees without any justification other than NetSoc's apparent desire to force a settlement.  Finally, NetSoc's now-dismissed case concerning the '107 Patent is exceptional, given that NetSoc should have realized before filing its Original and Amended Complaint that the '107 Patent is directed to unpatentable subject matter had it conducted a proper pre-suit investigation.  This case is also exceptional given NetSoc's failure to drop its '107 Patent claims after Oath filed its Motion to Dismiss.

### 1.   *Sua Sponte* Sanctions are Appropriate Under Rule 11

Every pleading that NetSoc's counsel signed and submitted with this Court was required by Rule 11 to be based on a reasonable inquiry and assert only objectively reasonable assertions and arguments.  NetSoc's counsel's admissions in July of 2019 make clear that NetSoc's Original and Amended Complaint, and its Opposition to Oath's Motion to Dismiss, violated this Rule. More specifically, NetSoc's counsel admitted on July 8, 2019 that it had "listed the wrong patent number" in its Complaint against Oath.  (Ex. B to Hutton Declaration, NetSoc counsel email of July 8, 2019).[2]  This error was objectively unreasonable because it would have been discoverable on even a cursory review of the Complaint and Amended Complaint:  a comparison of the '107 Patent to Paragraph 10 of the Original and Amended Complaint would have revealed that the charted "claim" did not actually appear in the '107 Patent at all.  Notwithstanding that fact, and notwithstanding the fact that Oath highlighted NetSoc's error in its Motion to Dismiss, NetSoc insisted for **months** in signed motions filed with this Court that its '107 Patent claims had been

---

[2] On a meet and confer call with Oath's counsel a few days thereafter, NetSoc's counsel conceded that it had no "Rule 11" basis to proceed against Oath on its '107 Patent claims.

properly pled. Thus, even if NetSoc's original "mistake" in asserting the '107 Patent was objectively reasonable, its failure to recognize that mistake when Oath's motion to dismiss was filed certainly was not, and thus its opposition in response to that motion certainly violated Rule 11.

In light of the above-described misconduct in NetSoc's pleadings filed in this case, as well as NetSoc's admissions that its original arguments were knowingly without merit, sanctions should be awarded. While NetSoc may argue now that it dropped the '107 Patent because it determined the '591 Patent has a better infringement "read," that "belated rationalization" does not excuse its prior violation of Rule 11. *Revellino & Byczek, LLP*, 682 F. App'x at 75 ("[T]he evident elisions in Ramirez's complaint demonstrate that the filing was submitted in bad faith, and subjectively so.").

Moreover, given that NetSoc violated this Rule with respect to not one, but two parties (Oath and Quora), the Court should sanction NetSoc not just to reimburse Oath for its reasonable attorneys' fees expended in defending against the '107 Patent, but also to deter further abuses by NetSoc and its counsel.

### 2. Sanctions Are Appropriate Under 28 U.S.C. § 1927 and the Court's Inherent Power

Sanctions are also appropriately assessed against NetSoc's counsel under 28 U.S.C. § 1927 and the Court's inherent power because the pattern of events in this case suggests that NetSoc sought to "swap horses" and substitute in allegations against Oath concerning the '591 Patent not just because of its mistake, but also because it was aware that the '107 Patent claimed unpatentable subject matter. NetSoc's belated decision unnecessarily multiplied the pleadings in this case and makes clear that its counsel failed to perform adequate research before asserting its original claims.

More specifically, and as set forth above, NetSoc's counsel has ***admitted*** that its claim against Oath under the '107 Patent was baseless.  Notwithstanding that fact, it continued to pursue that claim through complaint amendments and in response to motions to dismiss.  NetSoc only sought to effectively dismiss its '107 Patent claims against Oath after *inter partes* review proceedings were filed by other defendants on the '107 Patent (Ex. E to Hutton Declaration, Match IPR petitions), after this Court stayed discovery and made clear that it might rule in Oath's favor on its motion to dismiss (ECF 42), and after Judge Godbey issued a judgement against NetSoc in the Northern District of Texas finding the '107 Patent unpatentable (Ex. F to Hutton Declaration, Judge Godbey Order).  On these facts, NetSoc's conduct leads to the necessary conclusion that NetSoc's pursuit of the '107 Patent claims and its belated substitution of the '591 Patent was for an improper purpose (e.g., to extract a settlement payment).  This is precisely the type of improper conduct for which this District has previously imposed sanctions.  *Oliveri*, 803 F.2d at 1273.

### 3.    Oath is Entitled to Attorneys' Fees and Costs Pursuant to Federal Rule of Civil Procedure 41(d)

NetSoc's dismissal of the '107 Patent (ECF 62), and subsequent assertion of the "highly related" and "extreme[ly] similar[]" '591 Patent, also entitles Oath to fees under Rule 41(d).  (ECF 48).  As explained above, costs may be imposed under this Rule when a plaintiff has dismissed a claim and then brought a second, "nearly identical" claim against the same party seeking "nearly identical" relief, even when there is no evidence of bad faith by the plaintiff.  Here, there is no dispute that NetSoc is seeking the same relief (damages for the alleged infringement by the www.answers.yahoo.com website) and NetSoc admits that it is asserting a "nearly identical" patent claim.  Indeed, and as further explained in Oath's Motion to Dismiss NetSoc's Second Amended Complaint (ECF 64 at 11-13), the '591 Patent and the '107 Patent are virtually identical.  NetSoc's reassertion of a different, but nearly identical, patent infringement claim also prejudiced Oath by

causing Oath to expend unnecessary money on attorneys' fees defending against the now-dismissed '107 Patent.  An attorneys' fee award under Rule 41(d) to compensate Oath for its work defending against the '107 Patent would properly deter NetSoc from engaging in future vexatious litigation practices.

### 4.    NetSoc's Suit Against Oath is Exceptional Under 35 U.S.C. § 285

An award of attorneys' fees to Oath is also appropriate under 35 U.S.C. § 285.  NetSoc has now dismissed with prejudice its allegations against Oath related to the '107 Patent.  As such, a determination as to whether those allegations were "exceptional" is appropriate at this time.  *Gust*, 226 F. Supp. 2d 232.

A review of NetSoc's case against Oath on the '107 Patent shows that it "st[ands] out from the rest" in the manner in which it was pursued and the strength of NetSoc's claims.  More specifically, NetSoc ignored the apparent deficiencies in its '107 Patent case from the outset—the substantial likelihood that the '107 Patent would be found unpatentable under 35 U.S.C. § 101 and, apparently, that Oath did not infringe.  The '107 Patent, as detailed in Oath's Motion to Dismiss the First Amended Complaint (ECF 27, 28), is clearly directed to the abstract concept of connecting a person with an issue that the person wishes to have solved to a group of people or companies that may be able to assist with that issue, and then giving the individual who provided the recommendation feedback on their response. (*See, e.g.,* ECF 28 at 8, 10-13).  The '107 Patent claims are devoid of any hardware requirements that would tie them to a particular device or implementation and did not claim any novel use of computers or computer algorithms.  (ECF 289 at 14-16).  NetSoc also clearly failed to conduct a reasonable investigation into its '107 Patent claims against Oath, as evidenced by its admitted "mistake" in asserting the '107 Patent.  Finally, this case is exceptional given NetSoc's conduct in litigation.  NetSoc's counsel ignored the very

17

apparent defects in its '107 Patent claims, despite being alerted to them by Oath and the other consolidated defendants' motions to dismiss.  NetSoc forced Oath to proceed through motion practice and letter briefing to the Court before finally admitting its error.

The deterrence function of awarding fees under § 285 is merited in this case—NetSoc's "mistake" with respect to not just one, but *two* defendants, suggests that NetSoc's failure to do a reasonable pre-suit investigation of its infringement allegations was not isolated to Oath's case. *Lumen View Tech., LLC v. Findthebest.com, Inc.*, 24 F. Supp. 3d 329, 336-37 (S.D.N.Y. 2014), *aff'd*, 811 F.3d 479 (Fed. Cir. 2016).

### B.      Oath's Attorneys' Fees Request is Reasonable

The amount of attorneys' fees that Oath is seeking, $32,788.50, is also reasonable, given the circumstances of this case.[3]  Attached to the Declaration of Alison Hutton filed in support of this motion are the invoices sent by Duane Morris to Oath reflecting the fees incurred prior to NetSoc's decision to dismiss the '107 Patent and the activities that necessitated those fees.  (Hutton Declaration at ¶ 15, Ex. G).[4]   As reflected in the invoices, the $32,788.50 in attorneys' fees includes fees incurred in March, April, June and July of this year reviewing, analyzing and responding to NetSoc's First Amended Complaint, as well as developing defenses to NetSoc's original '107 Patent assertion, until July 23, 2019 when NetSoc agreed to dismiss the '107 Patent with prejudice.

---

[3] Oath reserves its right to seek fees for the present motion, including providing an accounting for work performed on the present motion.

[4] In light of the competitively sensitive and confidential nature of the attorney invoices provided by Duane Morris to Oath, Oath is seeking to file the invoices at issue and portions of the declaration discussing them under seal, and would request that NetSoc's counsel exercise similar sensitivity in response to this motion and likewise seek to seal any portions of the NetSoc opposition that discuss Oath's counsel's rates and activities as reflected in the invoices.

Only three attorney timekeepers (partner Kevin Anderson, partner Alison Hutton, and associate Ralph Carter), a single paralegal (Edwin Grullon), and three docketing clerks (Onika McLean, Ashlee Carrington, Jeffrey Hayes) billed time to the matter (Hutton Declaration at ¶ 13, Ex. G).  Kevin Anderson is a partner at Duane Morris with 19 years of experience in patent litigation.  (Hutton Declaration at ¶ 15, Ex. H).  He is a former clerk to Hon. William C. Bryson of the U.S. Court of Appeals for the Federal Circuit, and prior to becoming a lawyer, designed software and computer systems in Silicon Valley and Research Triangle Park.  (*Id.*).  He has represented Oath and its parent company, Verizon, in numerous patent litigation matters.  (*Id.*). Alison Hutton is also a partner with 14 years of experience in intellectual property cases, including cases pending in this District.  (*Id.*).  Ms. Hutton is a 2005 graduate of the University of Virginia School of Law, where she was a semifinalist in the William Minor Lile Moot Court competition, and received her undergraduate degree from Duke University, which she attended on a full tuition B.N. Duke scholarship.  (*Id.*).  In addition to representing Verizon and Oath in patent litigation matters, Ms. Hutton has represented other technology companies such as Cisco, AT&T, ARRIS, and SAP.  (*Id.*).  Ralph Carter is an associate with five years of litigation experience.  (*Id.*).  Mr. Carter is a 2014 *cum laude* graduate of St. John's University School of Law, where he was a Ronald H. Brown Scholar and Executive Notes and Comments Editor for the Journal of Civil Rights and Economic Development.  (*Id.*).  Mr. Grullon is an IP Paralegal and has over 14 years of experience in that role at Duane Morris.  (*Id.* at ¶ 16, Ex. I).  Ms. McClean has twenty years of experience as a managing clerk/paralegal supervisor.  Ms. Carrington has worked for over six years as a paralegal.  (*Id.*).  Mr. Hayes has 34 years of experience as a paralegal.  (*Id.*).

As shown by the above and the invoices attached to Ms. Hutton's declaration, the $32,788.50 in fees requested by Oath are all related to reasonable work performed by Oath's

counsel defending and responding to NetSoc's '107 Patent allegations.  Oath's counsel is certainly

qualified, and has significant experience handling patent litigation matters like the present one.

There were only three total attorney timekeepers on the matter (and on all but one of the invoices

at issue, only two attorney timekeepers had any billable hours recorded), which is a low number

of attorneys given that the entire www.answers.yahoo.com website was implicated by NetSoc's

infringement claims.  Moreover, in the over four months that NetSoc's '107 Patent claims were

pending, Oath's counsel and the firm's support staff billed less than 70 hours total for work

defending Oath against NetSoc's vexatious allegations, reflecting that the time spent was not

"excessive, redundant, or otherwise unnecessary."  *Regeneron Pharm.*, 2018 WL 3425013, at *3

(quoting *Hensley*, 461 U.S. at 434).

The per hour rates charged to Oath, of approximately $450/hour on average, were also

reasonable.  (Hutton Declaration at ¶¶ 15-16).  The partner, associate, and paralegal/docketing

clerk billing rates are all in line with hourly fees that this Court has found reasonable in prior,

similarly sophisticated patent litigation matters for attorneys and support staff with similar levels

of experience.  *See, e.g., Regeneron Pharm.,* 2018 WL 3425013, at *4-5 (overall blended partner

rate of $799 per hour and blended rates for senior associates and associates of $699 and $422-664

respectively were reasonable in patent litigation matter); *River Light V, L.P. v. Lin & J Int'l, Inc.*,

No. 13CV3669 (DLC), 2015 WL 3916271, at *11-12 (S.D.N.Y. June 25, 2015) (finding partner

hourly rates of $720-725/hour reasonable under the circumstances and "generally consistent with

prevailing rates for experienced partners in intellectual property cases in this District" and rates of

$450-500/hour reasonable for associates and $245/hour reasonable for paralegals); *OZ Mgmt. LP

v. Ozdeal Inv. Consultants, Inc.,* No. 09 Civ 8665 (JGK) FM),  2010 WL 5538552, at *3 (S.D.N.Y.

Dec. 6, 2010) (finding that $657 per hour "is well within the range of rates for law firm partners

in the New York City area with significant intellectual property law experience" and approving associate hourly rates of $395 to $435), *adopted*, 2019 WL 43459 (S.D.N.Y. Jan. 5, 2011). Moreover, the rates are in line with rates reflected in the American Intellectual Property Law Association Report of the Economic Survey of June 2017, which this Court may consider to determine whether rates and litigation costs are reasonable. *Worldwide Home Prods.*, 2015 WL 1573325, at *4. (*See* Ex. J to Hutton Declaration, AIPLA, Report of the Economic Survey 2017 (June 2017) at 18, 21 (mean hourly billing rate by Partner in private firm with 10-14 years of IP experience $380/hour; for partner with 15-24 years of experience $500/hour; for associate with 7-9 years' experience $450/hour)). Finally, the fact that Oath, a sophisticated business entity, has paid the fees in full is indicative of the reasonableness of the fees. *Worldwide Home Prods.,* 2015 WL 1573325, at *3.

## V.      CONCLUSION

For all of the foregoing reasons, Oath seeks $32,788.50 in attorneys' fees it has incurred defending against NetSoc's baseless allegations concerning the '107 Patent. If the Court is not inclined to award attorneys' fees from the inception of this case, Oath would seek at a minimum the fees expended after the date on which Oath filed its Motion to Dismiss (March 26, 2019), which amounts to $22,106.00, as reflected in the invoices attached to Ms. Hutton's declaration.

Dated:      New York, New York
             September 13, 2019

                                        Respectfully submitted,

                                        DUANE MORRIS LLP


                                        By: /s/ Alison Haddock Hutton
                                             Alison Haddock Hutton
                                        1075 Peachtree Street NE, Suite 2000
                                        Atlanta, GA 30309-3929
                                        (404) 253-6932

AHHutton@duanemorris.com

Ralph Carter
DUANE MORRIS LLP
1540 Broadway
New York, New York 10036
(212) 692-1000
rcarter@duanemorris.com

*Attorneys for Defendant Oath Inc.*